**Will P. PIRKEY, M. D., Plaintiff,**

v.

**HOSPITAL CORPORATION OF AMERICA, a Foreign Corporation, Defendant.**

**Civ. A. No. 76–K–100.**

United States District Court,
D. Colorado.

Feb. 1, 1980.

John A. Meininger, Denver, Colo., Richard D. Dittemore, Englewood, Colo., for plaintiff.

C. Willing Browne, Shayne M. Madsen, Gorsuch, Kirgis, Campbell, Walker & Groves, Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

### STATEMENT OF CASE

This breach of contract action concerns agreements involving the employment of plaintiff, Dr. Pirkey, as an otolaryngologist at the King Faisal Specialist Hospital in Riyadh, Saudi Arabia. Defendant is an international recruiting and hospital management company. It asserts that in regard to the transactions which are the focus of the controversy involved in the instant case, it acted as the agent for the King Faisal Specialist Hospital.

Plaintiff allegedly first became aware of the employment possibilities at the King Faisal Specialist Hospital when he read a recruitment advertisement in a national medical publication. Plaintiff alleges that in reliance upon an oral offer made by defendant, he made arrangements in preparation for departure to Saudi Arabia. Such arrangements allegedly included the termination of his practice, the sale of his equipment, the referral of patients to other physicians and the shipment of his personal belongings to Saudi Arabia.

Before Dr. Pirkey's scheduled departure for Saudi Arabia, he received two employment agreements providing for the first and second years of employment. These contracts followed discussions between Dr. Pirkey and employees of defendant regarding employment. Plaintiff signed the two agreements. Included in each was a clause providing that the agreements would be construed in accordance with the laws of Saudi Arabia. The first year agreement

provided that the employee would be on probation for the first 90 days. Provisions specifically relating to termination of employment were also included in the agreement.

Because of the assassination of King Faisal as well as other reasons, Dr. Pirkey did not proceed to Riyadh as scheduled. Thereafter, defendant informed plaintiff that his employment was terminated effective May 12, 1975. Termination of plaintiff's employment followed an investigation of Dr. Pirkey's application and references. Defendant alleges that among other things, Dr. Pirkey did not include in his application information regarding his 1974 conviction for shoplifting. Plaintiff alleges that he plead nolo contendere to the alleged petty theft.

Plaintiff seeks damages arising from an alleged breach of contract as well as damages from actions brought pursuant to theories of promissory estoppel and outrageous conduct.

Defendant's motion to dismiss was denied on June 18, 1976, and its motion for summary judgment was denied on March 9, 1979. At the time both motions were denied, Chief Judge Winner indicated that Saudi Arabian law applied to the substantive issues of the case. The parties have been unable to agree upon the import and extent of the application. On May 21, 1979, defendant filed a motion for an in limine determination of choice-of-law which is now before me for consideration.

## CONTRACTUAL RIGHTS AND DUTIES

■ Defendant contends that Saudi Arabian and not Colorado law governs the contractual rights and duties of the parties. The choice-of-law rules of Colorado determine whether Colorado or Saudi Arabia provide the appropriate body of substantive law applicable to the issues involved in this controversy. *Klaxon v. Stentor Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Recently, the Colorado Supreme Court in *Wood Bros. Homes, Inc. v. Walker*

*Adjustment Bureau,* Colo., 601 P.2d 1369 (1979), expressly adopted the Restatement (Second) of Conflict of Laws for contract actions.

Restatement (Second) of Conflict of Laws § 187 provides:

(1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, . . . unless either

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties . . . .

In support of its assertion that Saudi Arabian law is applicable, defendant directs the court's attention to the choice-of-law clause contained within the employment agreement. The clause provides:

This agreement shall be construed in accordance with the Laws and Regulations of the Kingdom of Saudi Arabia.[1]

■ Under the Restatement approach the forum should apply the law chosen by the parties unless there is no reasonable basis for the choice. It is clear that Saudi Arabia bears enough of a relationship to this transaction to remove doubts that there was not a reasonable basis for the parties choice. Under the contract, Dr. Pirkey's services were to be rendered at the King Faisal Hospital in Saudi Arabia. Thus performance was to occur in Saudi Arabia.

---

1. Paragraph 17 of the Employment Agreement.

This fact alone provides a sufficient basis for the parties' choice.[2]

Choice-of-law provisions such as the one contained in the employment agreement are ordinarily given effect; they are considered a clear manifestation of the parties' intentions.[3] Plaintiff, however, attacks the validity of the choice-of-law provision. In his brief, plaintiff suggests that the provision is contained in an adhesion contract and as such should not be respected. Plaintiff seeks support in Comment b to § 187 which reads as follows:

> Impropriety or mistake. A choice-of-law provision, like any other contractual provision, will not be given effect if the consent of one of the parties to its inclusion in the contract was obtained by improper means, such as by misrepresentation, duress, or undue influence, or by mistake  .  .  .. A factor which the forum may consider is whether the choice-of-law provision is contained in an "adhesion" contract namely one that is drafted unilaterally by the dominant party and then presented on a "take-it-or-leave-it" basis to the weaker party who has no real opportunity to bargain about its terms. Such contracts are usually prepared in printed form, and frequently some of their provisions are in extremely small print. Common examples are tickets of various kinds and insurance policies. Choice-of-law provisions contained in such contracts are *usually respected.* (Emphasis added.) Nevertheless, the fo-

rum will scrutinize such contracts with care and will refuse to apply any choice-of-law provision they may contain if to do so would result in substantial injustice to the adherent.

■ In the instant case, the choice-of-law provision explicitly provided that the agreement would be construed in accordance with Saudi Arabian law. Although the agreement is a printed form apparently prepared by the King Faisal Specialist Hospital, this alone does not define adhesion contracts. *Clinic Masters v. District Court for Cty. of El Paso*, Colo., 556 P.2d 473 (1976). As the court stated in the above-cited case, plaintiff does not show that there was no opportunity for negotiation. Further, this is not a case involving a party with superior bargaining power attempting to take advantage of a weaker party who is incapable of fully understanding the contract provisions. The evidence indicates that Dr. Pirkey signed the contract with full knowledge of its contents. In fact not only the choice-of-law provision but several other provisions in the contract make reference to the applicability of Saudi Arabian Rules and Regulations.[4] Further, there is an absence of any evidence that Dr. Pirkey protested the inclusion of such provisions in the contract at the time he signed it or at any other time prior to the initiation of this action.

■ Protection of parties' expectations is a central policy underlying the law of con-

---

**2.** Comment f to § 187. When the state of the chosen law has some substantial relationship to the parties or the contract, the parties will be held to have had a reasonable basis for their choice. This will be the case, for example, when the selected state is where performance by one of the parties is to take place or where one of the parties is domiciled or has his principal place of business.

**3.** Comment e to § 187. Prime objectives of contract law are to protect justified expectations of the parties and to make it possible for them to foretell with accuracy what will be their rights and liabilities under the contract. These objectives may be best attained in multistate transactions by letting the parties choose the law to govern the validity of the contract and the rights created thereby. In this

way, certainty and predictability of result are most likely to be secured. Giving parties this power of choice is also consistent with the fact that, in contrast to other areas of the law, persons are free within broad limits to determine the nature of their contractual obligations.

**4.** Paragraph 8 of the agreement involves Workmen's Compensation. It provides: "In the event of the Employee's disability or death as a result of an industrial injury sustained during work, the Hospital will pay compensation in accordance with the provisions of the Regulation in effect in the Kingdom of Saudi Arabia  .  .  .." See paragraphs 11a, 11b and 12 as examples of other provisions referring to the application of Saudi Arabian law.

tracts. *Wood Bros. Homes, Inc. v. Walker Adjustment Bureau, supra.* The choice-of-law provision in the employment agreement evidences these parties' expectations. Again, there is no evidence that Dr. Pirkey had no opportunity to negotiate the choice-of-law provision or any other provision referring to Saudi Arabian law. This being the case, and also since it cannot be said that the choice-of-law provision is oppressive or offensive, it does not constitute a provision contained within an adhesion contract. *Merrill Lynch, P. F. & S., Inc. v. District Ct., El Paso Cty.*, 190 Colo. 239, 545 P.2d 1035 (1976).

Finally, application of the law chosen by the parties, Saudi Arabian law, to determine the rights and duties of the parties under the contract will not be contrary to a fundamental policy of Colorado. A fundamental policy must be a substantial one. Plaintiff offers no proof of such a policy nor am I able to deduce the existence of one.

### DAMAGES

■ Also in dispute is whether Saudi Arabian or Colorado law should control the measure of damages in the event of a ruling favorable to plaintiff. The measure of damages for breach of an employment contract is a substantive rather than a procedural matter. *Anderson-Thompson, Inc. v. Logan Grain Company*, 238 F.2d 598 (10th Cir. 1956); *Steranko v. Inforex, Inc.*, 5 Mass.App. 253, 362 N.E.2d 222 (1977); *see, United Telecommunications, Inc. v. American Tel. & Comm. Corp.*, 536 F.2d 1310 (10th Cir. 1976). Thus, I must rely upon the choice-of-law rules of Colorado, the forum state, to determine the applicable law.

Restatement (Second) of Conflict of Laws § 207 provides:

The measure of recovery for a breach of contract is determined by the local law of

the state selected by application of the rules of §§ 187–188.

In its brief defendant argues that:

[W]here; as here, the parties have expressly provided in their agreement what law will be applied to govern their contractual rights and duties, the elements and measure of damages will be determined by the law of the state so chosen; provided, of course, that there are sufficient contacts chosen by the parties to justify application of the internal law.[5]

Plaintiff on the other hand argues that I should follow the most significant contacts approach enunciated in § 188 of the Restatement to determine the applicable law. Apparently plaintiff views § 207 as requiring a separate determination; defendant ties the determination of what law applies to the damages issue to the choice already made as to what law governs rights and liabilities under the contract.

■ It is not now necessary for me to determine which interpretation is correct. Regardless of which approach is followed I am compelled, for public policy reasons, to apply the law of Colorado on the issue of the measure of damages. Defendant presents no proof of the applicable Saudi Arabian law controlling the measure of damages for breach of an employment contract. However, plaintiff sets forth the provisions of Chapter 11 of the Saudi Arabian Labor Code, Articles 172–188 as the law that would apply in this case. These provisions apparently require that damages be determined by special boards in Saudi Arabia. These boards can be characterized as an exclusive jurisdictional remedy.

Although the issue of damages is a substantive matter under Colorado law, if Saudi Arabian law is applied to this issue, the appropriate measure of damages will be inextricably tied to a Saudi Arabian administrative remedy; both parties have suggested that such an administrative remedy is a matter of procedure and as such is only applicable in the law of the forum. Based

---

**5.** Page 8 of defendant's memorandum brief in support of motion for in limine determination of choice of law.

on these considerations it becomes clear that the application of Saudi Arabian law on the issue of the measure of damages raises problems of fundamental due process which are serious enough to require the application of Colorado law.

## OUTRAGEOUS CONDUCT AND PROMISSORY ESTOPPEL CLAIMS

Plaintiff also asserts claims of outrageous conduct and promissory estoppel. In regard to the claim of outrageous conduct the parties present no evidence of Saudi Arabian law which pertains to this somewhat formless tort. The same is essentially true in regard to the promissory estoppel claim, except that defendant has indicated that Saudi Arabia may recognize the concept but only for transactions involving goods and not for those involving services. In spite of defendant's failure to present clear evidence of Saudi Arabian law pertaining to these issues, it suggests that applying the most significant contacts approach, Saudi Arabian law is applicable. However, the failure of defendant to make a definite showing of the existence of Saudi Arabian law in regard to these issues requires the application of Colorado law. A well settled rule of law in Colorado is that in the absence of definite proof to the contrary, it will be presumed that the laws of another state are the same as the laws of the forum. *Smith v. Kent Oil Co.*, 128 Colo. 80, 261 P.2d 149 (1953); *In re Custody of Rector*, Colo.App., 565 P.2d 950 (1977). Thus Colorado law shall govern plaintiff's outrageous conduct and promissory estoppel claims. It is

ORDERED that the law of Saudi Arabia shall govern the rights and liabilities of the parties under the contract. It is further

ORDERED that the law of Colorado shall govern issues pertaining to the measure of damages, promissory estoppel and outrageous conduct.